UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | |
|---|---|
| TROY LEE,<br><br>Plaintiff,<br><br>v.<br><br>3E MAVERICK, LLC,<br><br>Defendant. | Case No. 1:26-cv-00298<br><br>CHIEF JUDGE MARTIN REIDINGER |

**DEFENDANT 3E'S ANSWER TO PLAINTIFF'S VERIFIED COMPLAINT; AFFIRMATIVE DEFENSES; AND COUNTERCLAIM**

Defendant 3E Maverick, LLC ("3E") answers Plaintiff Troy Lee's ("Plaintiff") Verified Complaint as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Troy Lee is a resident and citizen of Henderson County, North Carolina.

**ANSWER: 3E lacks information or knowledge sufficient to respond to the allegations in Paragraph 1 and therefore denies them.**

2. Maverick Steel Group, LLC ("MSG" or the "Company") is a North Carolina limited liability company with its principal office located in Henderson County, North Carolina. MSG is not a party to this action; its membership interests are the subject of this dispute.

**ANSWER: 3E admits that MSG is a North Carolina limited liability company with its principal office located in Henderson County, North Carolina and that its membership interests are the subject of this dispute. 3E admits that MSG is not presently a party to this action.**

3. Plaintiff is the Sole Managing Member of MSG and claims ownership of one hundred percent (100%) of the validly outstanding membership interests of MSG.

**ANSWER: 3E denies the allegations in Paragraph 3.**

4. Plaintiff holds, and is entitled to enforce, all rights, claims, and remedies at issue in this action as the successor to and assignee of the membership interests and contract rights formerly held by J4 Investments. LLC ("J4") and by The Singer Company, LLC ("Singer"), pursuant to the assignments described below, including the May 28, 2026 Assignment of Membership Interests (Ex. C) and the June l, 2026 Confirmatory Assignment (Ex. B).

**ANSWER: Paragraph 4 sets forth legal conclusions that do not require a response from 3E. To the extent a response is required, 3E denies the allegations in Paragraph 4.**

5. Defendant 3E Maverick, LLC is upon information and belief, a New York limited liability company with a mailing address at c/o Fink & Zelmanovitz, P.C., 4119 Avenue T, Brooklyn, New York 11234.

**ANSWER: 3E admits that it is a New York limited liability company. 3E otherwise denies the allegations in Paragraph 5 because its mailing address is 2920 Avenue R, Suite 1029, Brooklyn, New York 11229.**

6. Upon information and belief, Joel Ciment is the sole member, managing member, or controlling principal of 3E.

**ANSWER: 3E admits the allegations in Paragraph 6.**

7. This Court has subject matter jurisdiction pursuant to N.C. Gen. Stat.§§ 7A-240 and 7A-243.

**ANSWER: Paragraph 7 sets forth legal conclusions that do not require a response from 3E.**

8. This Court has jurisdiction over Plaintiff's declaratory judgment claims pursuant to N.C. Gen. Stat. § 1-253 et seq.

**ANSWER: Paragraph 8 sets forth legal conclusions that do not require a response from 3E.**

9. This Court has personal jurisdiction over Defendant because:

(a) Defendant claims an ownership interest in a North Carolina limited liability company;

(b) Defendant, after its formation, executed the October 14, 2024 First Amendment to the 2023 Restated Operating Agreement (Ex. L), thereby adopting and consenting to the North Carolina governing-law and forum-selection provisions of MSG's operating agreements, and Defendant has affirmatively asserted rights under those agreements;

(c) Defendant purposefully directed activities toward North Carolina and toward a North Carolina business enterprise; and

(d) the exercise or jurisdiction is consistent with N.C. Gen. Stat. § 1-75.4 and constitutional due process.

**ANSWER: Paragraph 9 sets forth legal conclusions that do not require a response from 3E.**

10. Venue is proper in Henderson County pursuant to the forum-selection provisions of the governing operating agreements and N.C. Gen. Stat. § 1-82.

**ANSWER: Paragraph 10 sets forth legal conclusions that do not require a response from 3E.**

11. Complete relief in this action can be accorded between Plaintiff and Defendant without the joinder of any other person. J4 Investments, LLC has dissolved and assigned its membership interest to Plaintiff; The Singer Company, LLC and TB0401, LLC have each assigned

their membership interests to Plaintiff and withdrawn as members of MSG; and the ownership interests formerly held by those persons have been consolidated in Plaintiff. The interests of those persons are therefore aligned with Plaintiff and arc not adverse to the relief sought.

**ANSWER: Paragraph 11 sets forth legal conclusions and argument that do not require a response from 3E.**

12. This action does not seek to void, impair, modify, or adjudicate the rights of any lender of MSG, the validity of any loan, or the enforceability of any security interest, and seeks only to determine, as between Plaintiff and Defendant, the ownership of membership interests in MSG. No absent person is a necessary or indispensable party to this action. To the extent the Court determines that any person, including MSG, is a necessary party. Plaintiff is willing to join. and requests leave to join. such person.

**ANSWER: Paragraph 12 addresses Plaintiff's litigation objectives. 3E lacks information sufficient to respond to those allegations. Regardless of what relief Plaintiff seeks, 3E denies that he is entitled to any relief.**

## FACTUAL ALLEGATIONS

### A. Formation of MSG and Original Ownership Structure

13. MSG was organized as a North Carolina limited liability company on or about March 23, 2021.

**ANSWER: 3E admits the allegations in Paragraph 13.**

14. On or about April 13, 2021, Singer, J4, and TB0401, LLC ("TB0401") executed the original Operating Agreement of MSG (the "2021 Operating Agreement") (Ex. H).

**ANSWER: To the extent Paragraph 14 characterizes the 2021 Operating Agreement, that document speaks for itself. 3E admits that on or about April 13, 2021, Singer, J4, and TB0401 executed the original Operating Agreement of MSG.**

15. Under the 2021 Operating Agreement, the membership interests of MSG were:

(a) Singer – 48%;

(b) J4 – 48%; and

(c) TB0401 – 4%.

**ANSWER: To the extent Paragraph 15 characterizes the 2021 Operating Agreement, that document speaks for itself. 3E admits that under the 2021 Operating Agreement, the membership interests of MSG were Singer-48%; J4-48%; and TB0401-4%.**

16. Plaintiff Troy Lee was the sole member and controlling principal of J4.

**ANSWER: 3E admits the allegations in Paragraph 16.**

17. On or about June 24, 2022, a document entitled Amendment to the Operating Agreement was prepared purporting to modify ownership percentages (Ex. M).

**ANSWER: To the extent Paragraph 17 characterizes the Amendment to the Operating Agreement, that document speaks for itself. 3E otherwise denies the allegations in Paragraph 17.**

18. The purported amendment was not executed by TB0401.

**ANSWER: 3E admits that the version of the Amendment to the Operating Agreement attached to the Verified Complaint is not executed by TB0401. 3E otherwise lacks information or knowledge sufficient to respond to the allegations in Paragraph 18 and therefore denies them.**

19. The governing operating agreement required unanimous written consent of all members for amendment.

**ANSWER: To the extent Paragraph 19 characterizes the 2021 Operating Agreement, as amended by the June 24, 2022 Amendment to the Operating Agreement, that document speaks for itself. 3E admits that the operative Operating Agreement at that time states that amendment requires unanimous written consent of all members. 3E otherwise denies the allegations in Paragraph 19.**

20. Because TB0401 did not execute the amendment, Plaintiff alleges that the purported amendment was never validly adopted and is void and ineffective.

**ANSWER: Paragraph 20 sets forth legal conclusions and argument that do not require a response from 3E. To the extent a response is required, 3E denies the allegations in Paragraph 20.**

21. In the alternative, Plaintiff alleges that regardless of whether the June 2022 amendment is ultimately determined to be valid or invalid, the chain of title described herein results in Plaintiff's ownership of all valid membership interests of MSG.

**ANSWER: Paragraph 21 sets forth legal conclusions and argument that do not require a response from 3E. To the extent a response is required, 3E denies the allegations in Paragraph 21.**

**B. The February 2023 Integrated Transaction**

22. In early 2023, a series of documents were negotiated, prepared, and executed in connection with a proposed restructuring of MSG ownership and related debt obligations.

**ANSWER: 3E admits the allegations in Paragraph 22.**

23. These documents included:

(a) a First Amended and Restated Operating Agreement dated February 21, 2023 (Ex. I);

(b) a purported assignment from J4 to 3E dated February 21, 2023 (Ex. J);

(c) a subsequent assignment from Singer to J4 dated May 15, 2023 (Ex. K); and

(d) related transaction documents.

**ANSWER: To the extent Paragraph 23 characterizes the First Amended and Restated Operating Agreement, the assignment from J4 to 3E, and assignment from Singer to J4, those documents speak for themselves. 3E admits that the documents listed in Paragraph 23 were executed on or around the listed times and notes that additional related transaction documents not specifically identified in Paragraph 23 were executed on or about February 21, 2023. 3E otherwise denies the allegations in Paragraph 23 as stated.**

24. Plaintiff alleges that these documents were not independent transactions but instead formed a single integrated ownership restructuring.

**ANSWER: 3E denies the allegations in Paragraph 24.**

25. The integrated restructuring was premised upon the assumption and representation that J4 either owned or would own ninety-seven percent (97%) of MSG.

**ANSWER: 3E denies the characterization that the 2023 transactions were an "integrated restructuring". 3E admits that at the time of these transactions, it assumed that J4 owned or would own 97% of MSG.**

26. The ownership percentages reflected throughout the 2023 transaction documents depended upon that premise.

**ANSWER: 3E denies the allegations in Paragraph 26.**

27. The forty-six percent (46%) interest purportedly assigned to 3E was not separately negotiated as a transfer carved from J4's original ownership interest under the 2021 Operating Agreement, but instead was calculated and reflected as part of the integrated ownership structure embodied in the 2023 transaction documents.

**ANSWER: 3E admits that it assumed that J4 had a 97% interest in MSG at the time J4 assigned 3E its 46% membership interest.**

28. To the extent Defendant contends that the purported transfer should instead be treated as a transfer from J4's pre-existing ownership interest under the 2021 Operating Agreement, Plaintiff alleges that such interpretation is contrary to the integrated structure, intent, and express recitals of the 2023 transaction documents.

**ANSWER: Paragraph 28 sets forth legal conclusions and argument that do not require a response from 3E. To the extent a response is required, 3E denies the allegations in Paragraph 28.**

29. The forty-six percent (46%) interest reflected in the February 21, 2023 transaction documents was mathematically derived from the assumed post-consolidation ownership structure and not from J4's pre-existing ownership interest under the 2021 Operating Agreement. Had the parties intended a transfer solely from J4's original ownership position, the resulting ownership allocations reflected in the 2023 Restated Operating Agreement would have been materially different.

**ANSWER: 3E admits that the 3E Assignment contemplated that J4 had acquired Singer's membership interest such that J4 had a 97% interest at the time of the 3E Assignment.**

30. The transaction documents were drafted by Fink & Zelmanovitz, P.C., counsel for 3E.

**ANSWER: 3E admits the allegations in Paragraph 30.**

31. Fink & Zelmanovitz did not represent Plaintiff, J4, Singer, or TB0401.

**ANSWER: 3E admits the allegations in Paragraph 31.**

32. Plaintiff was not represented by independent counsel in connection with the transaction.

**ANSWER: 3E admits the allegations in Paragraph 32.**

33. 3E and its counsel knew Plaintiff was not represented by independent counsel.

**ANSWER: 3E admits the allegations in Paragraph 33.**

34. To the extent the Court determines that any ambiguity exists concerning the source, nature, ownership, or allocation of the membership interests reflected in the February 21, 2023 transaction documents, such ambiguity should be construed against 3E because the transaction documents were drafted by 3E's counsel, Fink & Zelmanovitz, P.C.

**ANSWER: Paragraph 34 sets forth legal conclusions and argument that do not require a response from 3E. To the extent a response is required, 3E denies the allegations in Paragraph 34.**

35. Apart from a nominal capital contribution of $100.00 recited in the 2023 Restated Operating Agreement, which was the same nominal amount recited for each member, any funds advanced to or for the benefit of MSG by 3E Maverick, LLC, or by Joel Ciment or entities affiliated with him, were advanced as a loan or debt obligation and not as a capital contribution or as consideration for the purchase, acquisition, or transfer of any membership or equity interest in MSG. The February 21, 2023 J4-3E Assignment itself provides that any additional monies given to the Company shall be deemed a loan and not a capital contribution.

**ANSWER: To the extent Paragraph 35 characterizes J4's assignment to 3E, that document speaks for itself. 3E admits that it contributed a $100 capital contribution and that the 3E Assignment states that "any additional monies that may be given to the Company, other than described in this agreement, shall be deemed a loan and not Capital Contribution." 3E otherwise denies the allegations in Paragraph 35.**

36. Apart from that nominal $100.00 capital contribution, 3E Maverick, LLC paid no consideration to J4, to MSG, or to any member or MSG in exchange for any membership or equity interest in MSG, and $100.00 was not consideration commensurate with, or paid in exchange for, a forty-six percent (46%) equity interest. To the extent membership interests were referenced in connection with such financing, they were treated as collateral securing debt rather than as equity interests purchased for value.

**ANSWER: 3E denies the allegations in Paragraph 36.**

37. Neither the February 21, 2023 J4-to-3E Assignment nor any other transaction document identifies any purchase price to be paid by 3E for the purported membership interest, allocates any portion of any financing as consideration for equity, or reflects any agreement by J4, MSG, or any member to exchange ownership for financing.

**ANSWER: To the extent Paragraph 37 characterizes the J4-to-3E Assignment, that document speaks for itself. 3E admits the allegations in Paragraph 37.**

## C. The Purported Assignment to 3E and 3E's Nonexistence

38. On February 21, 2023, J4 executed an Assignment of Membership Interest purporting to transfer forty-six percent (46%) of MSG to 3E (Ex. J).

**ANSWER: To the extent Paragraph 38 characterizes the February 21, 2023 Assignment of Membership Interest from J4 to 3E, that document speaks for itself. 3E admits that under this agreement, J4 assigned a 46% membership interest in MSG to 3E.**

39. The assignment recited that J4 owned ninety-seven percent (97%) of MSG.

**ANSWER: To the extent Paragraph 39 characterizes the February 21, 2023 Assignment of Membership Interest from J4 to 3E, that document speaks for itself. 3E admits that the assignment states that J4 warrants and represents that he currently owns 97% of the membership interest in MSG.**

40. The 2023 Restated Operating Agreement reflected ownership percentages of:

(a) J4 – 51%;

(b) 3E – 46%; and

(c) TB0401 – 3% (Ex. I).

**ANSWER: To the extent Paragraph 40 characterizes the February 21, 2023 First Amended and Restated Operating Agreement, that document speaks for itself. 3E admits that the 2023 Restated Operating Agreement reflects the ownership percentages as: J4-51%; 3E-46%; and TB0401-3%.**

41. Upon information and belief, 3E Maverick, LLC did not exist on February 21, 2023.

**ANSWER: 3E denies the allegations in Paragraph 41.**

42. According to the records of the New York Department of State, 3E Maverick, LLC was not formed until November 6, 2023 (Ex. N).

**ANSWER: To the extent Paragraph 42 characterizes the New York Department of State's online records, those documents speak for themselves. Insofar as a response is required, 3E admits the allegations in Paragraph 42.**

43. Upon information and belief, no predecessor entity, predecessor limited liability company, assumed-name or d/b/a entity, merged entity, converted entity, promoter-organized or promoter-owned entity, or other legal person existed that could lawfully have acted on behalf of, or taken title on behalf of 3E Maverick, LLC on February 21, 2023.

**ANSWER: 3E denies the allegations in Paragraph 43.**

44. Because 3E Maverick, LLC did not come into legal existence until November 6, 2023, it had no capacity on February 21, 2023 to take an assignment of, acquire, hold, or be admitted to any membership interest in MSG, and Joel Ciment's execution of the 2023 Restated Operating Agreement and the J4-to-3E Assignment purportedly on behalf of 3E Maverick, LLC was made on behalf of a principal that did not then exist.

**ANSWER: 3E denies the allegations in Paragraph 44.**

45. Accordingly, and independent of the failure of the conditions precedent the integrated nature or the transaction, and the over-conveyance described herein, the J4-to-3E Assignment dated February 21, 2023 was void ab initio, or alternatively void, voidable, ineffective, unenforceable, or otherwise incapable of transferring ownership, and conveyed no membership interest to 3E because no existing assignee existed capable of receiving the purported transfer.

**ANSWER: 3E denies the allegations in Paragraph 45.**

46. Upon information and belief, no post-formation assignment, transfer instrument, joinder, admission agreement, or other conveyance was ever executed after November 6, 2023 transferring any MSG membership interest to 3E Maverick, LLC.

**ANSWER: 3E denies the allegations in Paragraph 46.**

47. Upon information and belief, after November 6, 2023, no Member of MSG executed any instrument specifically admitting 3E Maverick, LLC as a Member of MSG, and no

member vote or written consent admitting 3E Maverick, LLC as a Member occurred, in each case pursuant to the procedures required by the Operating Agreement or applicable law, including N.C. Gen. Stat. § 57D-3-01.

**ANSWER: 3E admits that after November 6, 2023, no member vote admitting 3E as a member of MSG occurred. 3E otherwise denies the allegations in Paragraph 47.**

48. Upon information and belief, MSG's books and records contain no written consent, member resolution, membership ledger entry, certificate issuance, transfer register entry, or other corporate record reflecting the admission or 3E Maverick, LLC as a Member after November 6, 2023.

**ANSWER: 3E lacks information or knowledge sufficient to respond to the allegations in Paragraph 48 and therefore denies them.**

49. Under the 2023 Restated Operating Agreement as in effect at the time of the purported February 21, 2023 transfer to 3E, each membership interest in MSG was represented by a certificate and constituted a security, and the transfer of a membership interest was not effective until an endorsed certificate was delivered to the Company and the transfer was registered in the books and records of the Company. The Operating Agreement as then in effect further conditioned any transfer of a membership interest, and the admission of any new member, upon compliance with the procedures specified therein.

**ANSWER: To the extent Paragraph 49 characterizes the February 21, 2023 First Amended and Restated Operating Agreement, that document speaks for itself. 3E admits that the provisions described in Paragraph 49 are in Section 13 of the 2023 Restated Operating Agreement.**

50. No certificate representing any membership interest in MSG was ever issued, endorsed, or delivered to 3E Maverick, LLC, and no transfer of any membership interest to 3E Maverick, LLC was ever registered in the books and records of MSG. For this independent reason, the purported February 21, 2023 transfer to 3E never became effective under the Operating Agreement as then in effect, and in any event could not have been completed because 3E Maverick, LLC did not exist. The subsequent deletion of those certificate and registration provisions by the First Amendment did not, and could not, retroactively render effective a transfer that never took effect when purportedly made.

**ANSWER: Paragraph 50 sets forth legal conclusions and argument that do not require a response from 3E. To the extent a response is required, 3E lacks information or knowledge sufficient to respond to the allegations in Paragraph 50 and therefore denies the same.**

51. No consideration was ever paid by 3E after November 6, 2023 for any membership interest in MSG, and no person ever agreed after November 6, 2023 to sell, transfer, or convey any membership interest to 3E Maverick, LLC.

**ANSWER: 3E denies the allegations in Paragraph 51.**

52. Accordingly, even if 3E Maverick, LLC subsequently came into legal existence on November 6, 2023, no subsequent transfer of any membership interest to 3E Maverick, LLC was ever consummated after its formation. Any claim by 3E to ownership of a membership interest in MSG therefore depends entirely upon the February 21, 2023 J4-to-3E Assignment executed before 3E Maverick, LLC existed.

**ANSWER: 3E denies the allegations in Paragraph 52.**

53. Plaintiff alleges that post-formation conduct by 3E Maverick, LLC cannot retroactively vest ownership of a membership interest that was never validly transferred in the first

instance. To the extent Defendant contends that the February 21, 2023 transaction was later ratified, adopted, confirmed, or otherwise validated, Plaintiff alleges that ratification cannot create or convey property rights that were never effectively transferred and cannot cure the absence of a legally existing assignee at the time of the purported conveyance.

**ANSWER: Paragraph 53 offers legal conclusions that do not require a response from 3E. To the extent a response is required, 3E denies the allegations in Paragraph 53.**

**D. The Singer Assignment and Failure of Conditions Precedent**

54. On or about May 15, 2023, Singer and J4 executed an Assignment of Membership Interest and Release of All Debt (Ex. K).

ANSWER: **To the extent Paragraph 54 characterizes the May 15, 2023 Assignment of Membership Interest and Release of All Debt from Singer to J4, that document speaks for itself.**

55. The document expressly provided that no ownership interest would transfer unless and until Singer and Geoffrey Singer were fully released from MSG-related debt obligations.

**ANSWER: To the extent Paragraph 55 characterizes the May 15, 2023 Assignment of Membership Interest and Release of All Debt from Singer to J4, that document speaks for itself. 3E is not a party to this agreement and therefore lacks information or knowledge sufficient to respond to the allegations in Paragraph 55 and therefore denies them.**

56. The required debt releases constituted express conditions precedent.

**ANSWER: To the extent Paragraph 56 characterizes the May 15, 2023 Assignment of Membership Interest and Release of All Debt from Singer to J4, that document speaks for itself. To the extent the allegations in Paragraph 56 purport to state a legal conclusion, no**

**response is required. To the extent a response is required, 3E denies the allegations in Paragraph 56.**

57. The conditions precedent were material inducements to Singer's execution of the assignment.

**ANSWER: To the extent Paragraph 57 characterizes the May 15, 2023 Assignment of Membership Interest and Release of All Debt from Singer to J4, that document speaks for itself. To the extent the allegations in Paragraph 57 purport to state a legal conclusion, no response is required. To the extent a response is required, 3E denies the allegations in Paragraph 57.**

58. The MSG-related debt obligations from which Singer and Geoffrey Singer were required to be released included, among others, a Renasant Bank equipment loan (account ending in 0252) in an approximate amount or $401,365 at the relevant time, on which MSG was the obligor and on which Geoffrey Singer and Plaintiff Troy Lee were each personally liable as guarantors, together with other equipment-financing obligations personally guaranteed by Geoffrey Singer. That loan remains outstanding, with a balance of approximately $180,150.30 as reflected on Renasant Bank's loan statement dated July 24, 2026, and Geoffrey Singer has never been released from his personal guarantee of that loan.

**ANSWER: To the extent Paragraph 58 characterizes loan documents with Renasant Bank, those documents speak for themselves. 3E admits that the Renasant Bank equipment loan was the MSG-related debt obligation for which Singer and Geoffrey Singer were expecting to be released from and that Geoffrey Singer and Lee were personally liable for that loan, along with other equipment financing obligations. Upon information and belief, the**

**Renasant Bank loan was refinanced by Plaintiff and remains outstanding, and Geoffrey Singer is still a personal guarantor on the Renasant Bank loan.**

59. The parties contemplated that 3E and/or Joel Ciment would substitute themselves for Geoffrey Singer as a guarantor on those debt obligations so that Geoffrey Singer could be released.

**ANSWER: 3E admits that the parties contemplated that 3E and/or Joel Ciment would substitute themselves for Geoffrey Singer as a guarantor so that Geoffrey Singer could be released but that the parties understood there was no guarantee that Renasant Bank would approve 3E and/or Joel Ciment to take over as the guarantor.**

60. As part of the integrated transaction, 3E, acting through its principal Joel Ciment, undertook responsibility for obtaining the release of Singer and Geoffrey Singer from MSG-related debt obligations and for facilitating the substitution of 3E and/or Joel Ciment in place of Geoffrey Singer as a guarantor on those obligations. That undertaking was limited to obtaining the release of, and substituting for, Geoffrey Singer as a guarantor, and did not extend to paying off or otherwise relieving MSG of the underlying debt obligations on which MSG was the obligor.

**ANSWER: 3E admits that it made best efforts to replace Geoffrey Singer as the guarantor on the Renasant Bank loan and that this undertaking did not extend to paying off or otherwise relieving MSG of the underlying debt obligations on which MSG was the obligor.**

61. These undertakings were understood by the participants in the transaction to be material inducements for Singer's execution of the Singer Assignment and were essential to the intended ownership restructuring contemplated by the transaction.

**ANSWER: 3E lacks information or knowledge sufficient to respond to the allegations in Paragraph 61 and therefore denies them.**

62. Upon information and belief, Joel Cimcnt communicated with Renasant Bank, including with its representative Dan Lochridge, concerning the substitution of 3E and/or Joel Ciment for Geoffrey Singer on the Renasant equipment loan.

**ANSWER: 3E admits the allegations in Paragraph 62.**

63. Joel Ciment declined to complete the substitution, including by declining to provide the personal financial information required by the lender and declining to disturb the existing loan terms, and represented that he would complete the substitution at a later date.

**ANSWER: 3E admits that its conversations with Renasant Bank were fluid and ongoing. 3E otherwise denies the allegations in Paragraph 63.**

64. 3E never completed the contemplated substitution.

**ANSWER: 3E admits that it was not substituted in for Geoffrey Singer as the guarantor on the Renasant Bank loan.**

65. Geoffrey Singer was never released from the relevant debt obligations.

**ANSWER: 3E admits the allegations in Paragraph 65.**

66. The conditions precedent were never satisfied.

**ANSWER: To the extent the allegations in Paragraph 66 purport to state a legal conclusion, no response is required. To the extent a response is required, 3E denies the allegations in Paragraph 66.**

67. By the express terms of the Singer Assignment, no ownership interest ever transferred from Singer to J4.

**ANSWER: To the extent the allegations in Paragraph 67 purport to state a legal conclusion, no response is required. To the extent a response is required, 3E denies the allegations in Paragraph 67.**

68. Accordingly, J4 never acquired Singer's ownership interest.

**ANSWER: To the extent the allegations in Paragraph 68 purport to state a legal conclusion, no response is required. To the extent a response is required, 3E denies the allegations in Paragraph 68.**

69. Because J4 never acquired Singer's ownership interest, the central premise of the 2023 restructuring – that J4 owned ninety-seven percent (97%) of MSG – failed.

**ANSWER: 3E denies the allegations in Paragraph 69.**

70. Plaintiff further alleges that the integrated ownership structure reflected in the transaction documents was therefore based upon ownership interests that never vested.

**ANSWER: 3E denies the allegations in Paragraph 70.**

**E. The March 1, 2024 Transfer from J4 to Troy Lee**

71. On or about March 1, 2024, J4 transferred and assigned all of its right, title, and interest in its MSG membership interest to Plaintiff Troy Lee.

**ANSWER: 3E admits the allegations in Paragraph 71.**

72. At all relevant times, Plaintiff Troy Lee was the sole member and controlling principal of J4.

**ANSWER: 3E admits the allegations in Paragraph 72.**

73. Following the transfer, Plaintiff was treated by MSG and the parties as the direct holder of the former J4 interest.

**ANSWER: 3E admits that as of March 1, 2024, it treated Plaintiff as the direct holder of the former J4 interest. 3E otherwise lacks information or knowledge sufficient to respond to the allegations in Paragraph 73 and therefore denies them.**

74. On or about August 20, 2024, Joel Ciment, the principal of 3E, acknowledged and confirmed in a written communication to Plaintiff that the membership interest formerly held by J4 was then held by Plaintiff Troy Lee individually, instructing that an addendum be prepared providing that wherever the governing documents referred to J4 Investments, LLC, that reference was now to Troy Lee as an individual.

**ANSWER: To the extent Paragraph 74 characterizes an August 20, 2024 communication from Ciment to Plaintiff, that document speaks for itself. 3E admits the allegations in Paragraph 74.**

75. J4 thereafter retained no beneficial ownership interest in MSG.

**ANSWER: 3E admits the allegations in Paragraph 75.**

76. On or about June 1, 2026, J4, acting through Plaintiff as its sole member, executed a Confirmatory Assignment confirming and ratifying the March 1, 2024 transfer to Plaintiff (Ex. B).

**ANSWER: To the extent Paragraph 76 characterizes the June 1, 2026 Confirmatory Assignment, that document speaks for itself. 3E is not a party to this agreement and therefore lacks information or knowledge sufficient to respond to the allegations in Paragraph 76 and therefore denies them.**

**F. The October 14, 2024 First Amendment**

77. On or about October 14, 2024, Plaintiff Troy Lee, TB0401, MSG, and 3E executed a First Amendment to the 2023 Restated Operating Agreement (Ex. L).

**ANSWER: To the extent Paragraph 77 characterizes the October 14, 2024 First Amendment to the 2023 Restated Operating Agreement, that document speaks for itself. 3E admits that**

**it executed the First Amendment to the 2023 Restated Operating Agreement on or about October 14, 2024.**

78. The First Amendment recited that, as of March 1, 2024, J4 had assigned its membership interest to Plaintiff Troy Lee.

**ANSWER: To the extent Paragraph 78 characterizes the First Amendment, that document speaks for itself. 3E admits that the First Amendment states that as of March 1, 2024, J4 assigned its membership interest in the Company to Troy Lee.**

79. The First Amendment further reflected a membership structure of:

(a) Troy Lee – 51%;

(b) 3E – 45%; and

(c) TB0401 – 4%.

**ANSWER: To the extent Paragraph 79 characterizes the First Amendment, that document speaks for itself. 3E admits that the First Amendment identified the membership interests as Troy Lee – 51%; 3E – 45%; and TB0401- 4%.**

80. Although the First Amendment references 3E Maverick, LLC as a Member, the First Amendment acknowledged only the parties' then-existing understanding concerning ownership.

**ANSWER: 3E admits that the First Amendment references 3E as a Member and that Lee and TB0401 acknowledged 3E as a Member at the time of the First Amendment. 3E otherwise denies the allegations in Paragraph 80.**

81. However, the First Amendment did not itself assign, convey, transfer, or admit any membership interest to 3E.

**ANSWER: 3E denies the allegations in Paragraph 81.**

82. The First Amendment contains no operative words of conveyance transferring any membership interest to 3E.

**ANSWER: 3E denies the allegations in Paragraph 82.**

83. The First Amendment was not supported by any separate transfer document, separate consideration, or post-formation admission of 3E as a member.

**ANSWER: 3E denies the allegations in Paragraph 83.**

84. The First Amendment was prepared by counsel for 3E and was executed by the parties under the mutual mistaken belief that the February 2023 transaction was valid and effective and that 3E Maverick, LLC then held a validly transferred forty-five percent (45%) membership interest in MSG.

**ANSWER: 3E admits that 3E's counsel prepared the First Amendment. 3E otherwise denies the allegations in Paragraph 84.**

85. At and around the time of the First Amendment, and on repeated occasions, Joel Ciment represented to Plaintiff that the monies 3E and/or Joel Ciment had advanced in connection with MSG, which had been treated and recorded as loans and documented as a convertible promissory note, would be converted into equity, and that this promised conversion of those loans into equity was the basis and consideration for any membership interest reflected for 3E in the First Amendment.

**ANSWER: 3E denies the allegations in Paragraph 85.**

86. Joel Ciment presented the First Amendment, which had been prepared by 3E's counsel, to Plaintiff and repeatedly asked Plaintiff to sign it. Plaintiff was not represented by separate counsel in connection with the First Amendment and executed it in reliance upon Joel Ciment's representation that the loans would be converted into equity.

**ANSWER: 3E admits that its counsel prepared the First Amendment and that Plaintiff was not represented by separate counsel in connection with the First Amendment. 3E otherwise denies the allegations in Paragraph 86.**

87. The promised conversion never occurred. The advances were never converted into equity and continued to be treated and recorded as loans. Under the convertible promissory note, those advances could be converted into equity as a capital contribution or remain a loan repayable with interest, but could not be both; 3E and Joel Ciment have nonetheless continued to assert that the advances remain owed to them as a loan entitled to repayment priority as the first money out, while simultaneously claiming the membership interest recited in the First Amendment. Joel Ciment has himself continued to characterize the advances as loans accruing interest, including by asserting that past-due interest was owed on the principal advanced. Plaintiff at all times maintained, and continues to maintain, that the advances were loans and not equity contributions.

**ANSWER: 3E denies the allegations in Paragraph 87.**

88. To the extent the First Amendment recited a forty-five percent (45%) interest for 3E, that recital was induced by, and executed in reliance upon, representations that Joel Ciment and 3E did not perform, and does not constitute a knowing, bargained-for, or independent grant, conveyance, assignment, or admission of any membership interest to 3E.

**ANSWER: 3E denies the allegations in Paragraph 88.**

89. The ownership percentages recited in the First Amendment were a recital of that assumed and mistaken understanding and did not constitute an independent grant, conveyance, assignment, or admission or any membership interest to 3E, and no consideration passed to 3E for any membership interest in connection with the First Amendment.

**ANSWER: 3E denies the allegations in Paragraph 89.**

90. Neither Plaintiff nor any other signatory to the First Amendment intended to create, convey, assign, admit, or grant any new membership interest to 3E Maverick, LLC through the execution of the First Amendment, and no party negotiated, discussed, or exchanged consideration for any such transfer in connection with the First Amendment.

**ANSWER: 3E denies the allegations in Paragraph 90.**

91. Even assuming the February 21, 2023 transaction was capable of later adoption or ratification, no instrument was ever executed after November 6, 2023 by which any then-existing person or entity conveyed, reassigned, granted, admitted, or transferred any membership interest to 3E Maverick, LLC. Accordingly, there existed no property interest capable of being ratified, adopted, or confirmed.

**ANSWER: 3E denies the allegations in Paragraph 91.**

92. Accordingly, Plaintiff denies that the First Amendment independently vested ownership rights in 3E.

**ANSWER: 3E denies the allegations in Paragraph 92.**

**G. The Singer Termination**

93. On or about May 27, 2026, Singer executed a document entitled Termination of Assignment Due to Failure of Conditions Precedent (Ex. A).

**ANSWER: To the extent Paragraph 93 characterizes the Termination of Assignment Due to Failure of Conditions Precedent, that document speaks for itself. 3E denies that the Termination of Assignment Due to Failure of Conditions Precedent has any legal effect.**

94. In that document, Singer formally declared that the conditions precedent contained in the Singer Assignment had never been satisfied.

**ANSWER: To the extent Paragraph 94 characterizes the Termination of Assignment Due to Failure of Conditions Precedent, that document speaks for itself. 3E admits that the Termination states that the conditions precedent contained in the Singer Assignment had never been satisfied. 3E denies that the Termination of Assignment Due to Failure of Conditions Precedent has any legal effect.**

95. Singer further declared that the Singer Assignment never became effective.

**ANSWER: To the extent Paragraph 95 characterizes the Termination of Assignment Due to Failure of Conditions Precedent, that document speaks for itself. 3E admits that the Termination states that the Singer Assignment never became effective. 3E denies that the Termination of Assignment Due to Failure of Conditions Precedent has any legal effect.**

96. Singer further declared that the purported transfer was null, void, and of no force and effect.

**ANSWER: To the extent Paragraph 96 characterizes the Termination of Assignment Due to Failure of Conditions Precedent, that document speaks for itself. 3E admits that the Termination states that the transfer was null, void, and of no force and effect. 3E denies that the Termination of Assignment Due to Failure of Conditions Precedent has any legal effect.**

97. The Singer Termination was communicated to MSG, Plaintiff, 3E, and other interested parties.

**ANSWER: 3E admits that Plaintiff communicated the Singer Termination to 3E after the Singer Termination was executed. 3E lacks information or knowledge sufficient to respond to the remaining allegations in Paragraph 97 and therefore denies them.**

**H. The Consolidation Assignments**

98. On or about May 28, 2026, Singer, TB0401, and Plaintiff executed an Assignment or Membership Interests (Ex. C).

**ANSWER: To the extent Paragraph 98 characterizes the Assignment of Membership Interests, executed on or about May 28, 2026, that document speaks for itself. 3E denies that the Assignment of Membership Interests has any legal effect.**

99. Through that transaction:

(a) Singer assigned all right, title, and interest in its MSG membership interest to Plaintiff;

(b) TB0401 assigned all right, title, and interest in its MSG membership interest to Plaintiff; and

(c) Singer and TB0401 withdrew as members.

**ANSWER: To the extent Paragraph 99 characterizes the Assignment of Membership Interests, that document speaks for itself. 3E admits that the Assignment of Membership Interests purports to assign Singer and TB0401's interests to Plaintiff and Singer and TB0401 purport to withdraw from MSG. 3E denies that the Assignment of Membership Interests has any legal effect.**

100. The transaction was further documented by the Second Amendment to the 2023 Restated Operating Agreement and the Sole-Member Operating Agreement, each dated on or about May 31, 2026 (Exs. D and E).

**ANSWER: To the extent Paragraph 100 characterizes the Second Amendment to the 2023 Restated Operating Agreement and the Sole-Member Operating Agreement, those documents speak for themselves. 3E denies that either of those documents has any legal effect.**

101. As confirmed by the June 1, 2026 Confirmatory Assignment (Ex. B), Plaintiff thereafter became the sole holder of all ownership interests claimed by Singer, TB0401, and J4.

**ANSWER: To the extent Paragraph 101 characterizes the Confirmatory Assignment, that document speaks for itself. 3E denies that the Confirmatory Assignment has any legal effect.**

**I. The Present Controversy**

102. By letter dated June l, 2026, Plaintiff notified 3E of the Singer Termination and the resulting consolidation of ownership in Plaintiff (Ex. F).

**ANSWER: To the extent Paragraph 102 characterizes the June 1, 2026 letter that Plaintiff sent to 3E, that letter speaks for itself. 3E admits to receiving a letter from Plaintiff on or about June 1, 2026 but denies the allegations in the letter. 3E otherwise denies the allegations in Paragraph 102.**

103. By letter dated June 3, 2026, 3E rejected Plaintiff's position and asserted continuing ownership in MSG (Ex. G)

**ANSWER: To the extent Paragraph 103 characterizes the June 3, 2026 letter that 3E sent to Plaintiff, that letter speaks for itself. 3E admits the allegations in Paragraph 103.**

104. In its June 3, 2026 letter, 3E's counsel acknowledged that upon the failure of the conditions precedent, Geoffrey Singer would be restored to his prior membership interest – an admission concerning the operative effect of the conditions precedent.

**ANSWER: To the extent Paragraph 104 characterizes 3E's June 3, 2026 letter, that document speaks for itself. 3E denies the allegations in Paragraph 104.**

105. Having acknowledged through counsel that the failure of the conditions precedent would restore Geoffrey Singer to his prior membership interest, Defendant cannot consistently contend both that the conditions precedent failed and that 3E nonetheless acquired and holds a

membership interest derived from the same Singer interest that the failed conditions precedent restored to Singer.

**ANSWER: 3E denies the allegations in Paragraph 105.**

106. 3E continues to claim a forty-five percent (45%) ownership interest in MSG.

**ANSWER: 3E admits that it continues to claim that it has at least a 45% ownership interest in MSG.**

107. 3E has demanded access to MSG books and records.

**ANSWER: 3E admits the allegations in Paragraph 107.**

108. 3E has threatened litigation concerning ownership and control of MSG.

**ANSWER: 3E admits the allegations in Paragraph 108.**

109. A present, actual, and justiciable controversy therefore exists concerning ownership of MSG.

**ANSWER: To the extent the allegations in Paragraph 109 purport to state legal conclusions, no response is required. 3E admits that it disputes Plaintiff's claim that he is the sole owner of MSG.**

**J. Summary of Ownership Defects**

110. Plaintiff alleges that 3E's ownership claim fails independently for multiple reasons.

**ANSWER: 3E admits that Plaintiff asserts various issues with 3E's ownership claim. 3E denies that its ownership claim fails for any reason.**

111. First, 3E did not exist when the February 21, 2023 assignment was executed.

**ANSWER: 3E denies the allegations in Paragraph 111.**

112. Second, no subsequent assignment or admission occurred after 3E came into existence.

**ANSWER: 3E denies the allegations in Paragraph 112.**

113. Third, the Singer Assignment never became effective because the conditions precedent failed.

**ANSWER: 3E denies the allegations in Paragraph 113.**

114. Fourth, J4 never acquired Singer's ownership interest.

**ANSWER: 3E denies the allegations in Paragraph 114.**

115. Fifth, J4 never acquired the ninety-seven percent (97%) ownership position upon which the transaction structure was based.

**ANSWER: 3E denies the allegations in Paragraph 115.**

116. Sixth, the 2023 transaction documents formed a single integrated restructuring whose central premise failed.

**ANSWER: 3E denies the allegations in Paragraph 116.**

117. Seventh, the First Amendment did not independently transfer ownership to 3E.

**ANSWER: 3E denies the allegations in Paragraph 117.**

118. Eighth, 3E's counsel drafted the transaction documents while, upon information and belief, aware of ownership defects and inconsistencies reflected within those documents.

**ANSWER: 3E admits that its counsel drafted the transaction documents. 3E otherwise denies the allegations in Paragraph 118.**

119. Ninth, no documented purchase price or specifically identified equity consideration was paid by 3E for any membership or equity interest in MSG; and, apart from a nominal $100.00 capital contribution recited equally for each member, the funds advanced by or on behalf of 3E in connection with MSG were loans or debt rather than payment for equity.

**ANSWER: 3E denies that Paragraph 119 describes a defect with 3E's ownership interest in MSG.**

**COUNT I**
**DECLARATORY JUDGMENT**

120. Plaintiff incorporates all preceding allegations as if fully set forth herein.

**ANSWER: 3E reasserts and incorporates its responses to the foregoing Paragraphs as if the same were fully set forth herein.**

121. An actual controversy exists concerning ownership of MSG.

**ANSWER: 3E admits the allegations in Paragraph 121.**

122. Plaintiff seeks a declaration that the conditions precedent contained in the Singer Assignment were never satisfied.

**ANSWER: Paragraph 122 addresses Plaintiff's litigation objectives. 3E lacks information sufficient to respond to those allegations. Regardless of what relief Plaintiff seeks, 3E denies that he is entitled to any relief.**

123. Plaintiff seeks a declaration that the Singer Assignment never became effective.

**ANSWER: Paragraph 123 addresses Plaintiff's litigation objectives. 3E lacks information sufficient to respond to those allegations. Regardless of what relief Plaintiff seeks, 3E denies that he is entitled to any relief.**

124. Plaintiff seeks a declaration that J4 never acquired Singer's ownership interest.

**ANSWER: Paragraph 124 addresses Plaintiff's litigation objectives. 3E lacks information sufficient to respond to those allegations. Regardless of what relief Plaintiff seeks, 3E denies that he is entitled to any relief.**

125. Plaintiff seeks a declaration that the February 21, 2023 assignment to 3E was void ab initio, or alternatively void, ineffective, unenforceable, or otherwise incapable of transferring any membership interest to 3E, because 3E did not exist at the time of the purported transfer.

**ANSWER: Paragraph 125 addresses Plaintiff's litigation objectives. 3E lacks information sufficient to respond to those allegations. Regardless of what relief Plaintiff seeks, 3E denies that he is entitled to any relief.**

126. Plaintiff seeks a declaration that no valid ownership interest was subsequently transferred to JE.

**ANSWER: Paragraph 126 addresses Plaintiff's litigation objectives. 3E lacks information sufficient to respond to those allegations. Regardless of what relief Plaintiff seeks, 3E denies that he is entitled to any relief.**

127. Plaintiff seeks a declaration that the First Amendment did not independently transfer ownership to 3E.

**ANSWER: Paragraph 127 addresses Plaintiff's litigation objectives. 3E lacks information sufficient to respond to those allegations. Regardless of what relief Plaintiff seeks, 3E denies that he is entitled to any relief.**

128. Plaintiff seeks a declaration that Plaintiff is the sole owner of all validly outstanding membership interests of MSG.

**ANSWER: Paragraph 128 addresses Plaintiff's litigation objectives. 3E lacks information sufficient to respond to those allegations. Regardless of what relief Plaintiff seeks, 3E denies that he is entitled to any relief.**

129. Plaintiff seeks a declaration that 3E has no ownership interest in MSG.

**ANSWER: Paragraph 129 addresses Plaintiff's litigation objectives. 3E lacks information sufficient to respond to those allegations. Regardless of what relief Plaintiff seeks, 3E denies that he is entitled to any relief.**

**COUNT II**
**DETERMINATION OF MEMBERSHIP OWNERSHIP AND QUIET TITLE**

130. Plaintiff incorporates all preceding allegations as if fully set forth herein.

**ANSWER: 3E reasserts and incorporates its responses to the foregoing Paragraphs as if they were fully set forth herein.**

131. Plaintiff claims ownership of one hundred percent (100%) of the validly outstanding membership interests in MSG.

**ANSWER: 3E admits that Plaintiff claims a 100% ownership of the membership interests in MSG. 3E otherwise denies the allegations in Paragraph 131.**

132. 3E claims ownership of approximately forty-five percent (45%) of MSG.

**ANSWER: 3E admits that it claims an approximately 45% ownership interest in MSG.**

133. 3E's claim constitutes a cloud upon Plaintiff's ownership rights.

**ANSWER: 3E denies the allegations in Paragraph 133.**

134. Plaintiff is entitled to a judicial determination of ownership and an order quieting title to all valid membership interests in MSG.

**ANSWER: 3E denies the allegations in Paragraph 134.**

**COUNT III**
**BREACH OF CONTRACT**
**(PLED IN THE ALTERNATIVE)**

135. Plaintiff incorporates all preceding allegations as if fully set forth herein.

**ANSWER: 3E reasserts and incorporates its responses to the foregoing Paragraphs as if the same were fully set forth herein.**

136. This Count is pled in the alternative to Plaintiff's allegation that 3E lacked legal existence and capacity, and is asserted only to the extent the Court determines that 3E had legal existence and capacity and was a valid party to the integrated transaction with enforceable obligations.

**ANSWER: Paragraph 136 addresses Plaintiff's litigation objectives. 3E lacks information sufficient to respond to those allegations. Regardless of what relief Plaintiff seeks, 3E denies that he is entitled to any relief.**

137. The Singer Assignment, 2023 Restated Operating Agreement, J4-to-3E Assignment, and related transaction documents constituted a single integrated transaction intended to operate together to accomplish a unified restructuring of ownership, control, financing, and debt obligations relating to MSG.

**ANSWER: 3E denies the allegations in Paragraph 137.**

138. The integrated transaction contemplated that Singer and Geoffrey Singer would be released from MSG-related debt obligations.

**ANSWER: 3E admits that at the time of the February 2023 transactions, the parties contemplated that Singer and Geoffrey Singer would be released from MSG-related debt obligations. 3E otherwise denies the allegations in Paragraph 138.**

139. Those releases were material inducements to the transaction.

**ANSWER: 3E denies the allegations in Paragraph 139.**

140. 3E, through Joel Ciment and through the structure of the transaction it proposed and documented, undertook responsibility for obtaining or facilitating those releases.

**ANSWER: 3E admits that 3E, through Joel Ciment, worked with Renasant Bank in an effort to take over as the guarantor on the loan.**

141. 3E failed to complete the contemplated substitution process.

**ANSWER: 3E admits that it did not substitute in for Geoffrey Singer on the Renasant Bank loan.**

142. 3E failed to perform the obligations necessary to satisfy the conditions precedent.

**ANSWER: 3E denies the allegations in Paragraph 142.**

143. As a result, the transaction failed in material respects.

**ANSWER: 3E denies the allegations in Paragraph 143.**

144. Plaintiff, as successor to and assignee of the rights of J4 and Singer, is entitled to enforce the foregoing obligations.

**ANSWER: 3E denies the allegations in Paragraph 144.**

145. Plaintiff has suffered damages in an amount to be determined at trial, in excess of $25,000.

**ANSWER: 3E denies the allegations in Paragraph 145.**

## COUNT IV
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
## (PLED IN THE ALTERNATIVE)

146. Plaintiff incorporates all preceding allegations as if fully set forth herein.

**ANSWER: 3E reasserts and incorporates its responses to the foregoing Paragraphs as if the same were fully set forth herein.**

147. This Count is pled in the alternative and is asserted only to the extent the Court determines that 3E was a valid party to an enforceable contract concerning the transaction.

**ANSWER: Paragraph 147 addresses Plaintiff's litigation objectives. 3E lacks information sufficient to respond to those allegations. Regardless of what relief Plaintiff seeks, 3E denies that he is entitled to any relief.**

148. Every contract under North Carolina law contains an implied covenant of good faith and fair dealing.

**ANSWER: Paragraph 148 sets forth a legal conclusion that does not require a response from 3E. To the extent a response is required, 3E admits the allegations in Paragraph 148.**

149. The integrated 2023 transaction contemplated that Singer and Geoffrey Singer would be released from MSG-related debt obligations before ownership interests would transfer.

**ANSWER: 3E denies the allegations in Paragraph 149.**

150. 3E and its counsel drafted the transaction documents and knew the debt-release provisions were material conditions precedent.

**ANSWER: 3E admits that its counsel drafted the transaction documents. 3E otherwise denies the allegations in Paragraph 150.**

151. 3E thereafter failed to perform the conduct necessary to satisfy those conditions precedent.

**ANSWER: 3E denies the allegations in Paragraph 151.**

152. Despite the failure of those conditions precedent 3E continued to assert ownership rights arising from the very transaction whose conditions precedent were never satisfied.

**ANSWER: 3E admits that it has an ownership interest in MSG. 3E otherwise denies the allegations in Paragraph 152.**

153. Plaintiff alleges that 3E's conduct deprived Plaintiff, Singer, and MSG of the benefits reasonably expected from the transaction.

**ANSWER: 3E denies the allegations in Paragraph 153.**

154. Plaintiff has suffered damages as a result, in excess of $25,000.

**ANSWER: 3E denies the allegations in Paragraph 154.**

## COUNT V
## CONSTRUCTIVE TRUST AND UNJUST ENRICHMENT (ALTERNATIVE)

155. Plaintiff incorporates all preceding allegations as if fully set forth herein.

**ANSWER: 3E reasserts and incorporates its responses to the foregoing Paragraphs as if the same were fully set forth herein.**

156. This Count is pled in the alternative.

**ANSWER: Paragraph 156 addresses Plaintiff's litigation objectives. 3E lacks information sufficient to respond to those allegations. Regardless of what relief Plaintiff seeks, 3E denies that he is entitled to any relief.**

157. To the extent the Court determines that 3E acquired any ownership interest in MSG, Plaintiff alleges that such interest was obtained subject to obligations that were never performed.

**ANSWER: 3E denies the allegations in Paragraph 157.**

158. 3E obtained the benefit of an apparent ownership position while failing to complete the debt-substitution and release obligations contemplated by the integrated transaction.

**ANSWER: 3E denies the allegations in Paragraph 158.**

159. 3E paid no documented purchase price or specifically identified equity consideration for the membership interest it seeks to retain, and gave no value commensurate with a forty-six percent (46%) interest; any funds advanced by 3E or its affiliates in connection with MSG were loans or debt obligations rather than payment for equity. To permit 3E to retain a membership or equity interest for which it gave no value, while having failed to perform the obligations that were the premise of the transaction, would unjustly enrich 3E at Plaintiff's expense.

**ANSWER: 3E denies the allegations in Paragraph 159.**

160. It would be inequitable for 3E to retain any ownership interest resulting from a transaction whose material conditions failed.

**ANSWER: 3E denies the allegations in Paragraph 160.**

161. Equity requires the imposition of a constructive trust upon any ownership interest determined to be held by 3E.

**ANSWER: 3E denies the allegations in Paragraph 161.**

162. Plaintiff is entitled to restitution, disgorgement, reconveyance, or other equitable relief as the Court deems appropriate.

**ANSWER: 3E denies the allegations in Paragraph 162.**

**COUNT VI**
**REFORMATION, RESCISSION, CANCELLATION, OR OTHER EQUITABLE RELIEF (ALTERNATIVE)**

163. Plaintiff incorporates all preceding allegations as if fully set forth herein.

**ANSWER: 3E reasserts and incorporates its responses to the foregoing Paragraphs as if the same were fully set forth herein.**

164. This Count is pled in the alternative.

**ANSWER: Paragraph 164 addresses Plaintiff's litigation objectives. 3E lacks information sufficient to respond to those allegations. Regardless of what relief Plaintiff seeks, 3E denies that he is entitled to any relief.**

165. The February 2023 restructuring was based upon multiple assumptions that were materially inaccurate, failed to occur, or were impossible at the time the documents were executed.

**ANSWER: 3E denies the allegations in Paragraph 165.**

166. Those assumptions included:

(a) that J4 owned or would acquire ninety-seven percent (97%) of MSG;

(b) that the Singer Assignment would become effective;

(c) that the conditions precedent would be satisfied;

(d) that Singer and Geoffrey Singer would be released from MSG-related debt obligations;

(e) that 3E could validly receive ownership under the transaction structure reflected in the documents; and

(f) that the ownership allocations reflected in the documents accurately represented legally vested ownership interests.

**ANSWER: 3E denies that the 2023 transactions were a single integrated transaction such that the entirety of the documents executed at that time required relied on assumptions (a)-(f).**

167. Plaintiff alleges that the ownership allocations reflected in the transaction documents were based upon assumptions that never became true.

**ANSWER: 3E denies the allegations in Paragraph 167.**

168. Plaintiff further alleges that portions of the transaction documents are internally inconsistent and reflect ownership relationships that could not legally or factually have existed at the time stated.

**ANSWER: 3E denies the allegations in Paragraph 168.**

169. Enforcement of the documents according to their literal terms would produce a result inconsistent with the parties' actual intentions and expectations.

**ANSWER: 3E denies the allegations in Paragraph 169.**

170. Equity therefore requires reformation, rescission, cancellation, or other equitable modification of the February 2023 transaction documents.

**ANSWER: 3E denies the allegations in Paragraph 170.**

171. Plaintiff requests that the Court reform the transaction documents to reflect the parties' actual rights and obligations or, alternatively, rescind or cancel those documents to the extent necessary to resolve ownership or MSG.

**ANSWER: Paragraph 171 addresses Plaintiff's litigation objectives. 3E lacks information sufficient to respond to those allegations. Regardless of what relief Plaintiff seeks, 3E denies that he is entitled to any relief.**

**COUNT VII**
**TEMPORARY, PRELIMINARY, AND PERMANENT INJUNCTIVE RELIEF**

172. Plaintiff incorporates all preceding allegations as if fully set forth herein.

**ANSWER: 3E reasserts and incorporates its responses to the foregoing Paragraphs as if the same were fully set forth herein.**

173. Plaintiff is likely to succeed on the merits or the claims asserted herein.

**ANSWER: Paragraph 173 sets forth a legal conclusion that does not require a response from 3E. To the extent a response is required, 3E denies the allegations in Paragraph 173.**

174. Absent injunctive relief, Plaintiff faces irreparable harm including:

(a) interference with MSG operations;

(b) unauthorized access to MSG confidential information;

(c) disruption of business relationships;

(d) confusion concerning ownership and control of MSG;

(e) harm to goodwill and reputation; and

(f) interference with Plaintiff's management authority.

**ANSWER: 3E denies the allegations in Paragraph 174.**

175. Because MSG is Plaintiff's primary source of income and livelihood, the threatened harm to Plaintiff is immediate, ongoing, and not fully quantifiable in monetary terms.

**ANSWER: 3E denies the allegations in Paragraph 175.**

176. Monetary damages alone are inadequate to remedy such harm.

**ANSWER: 3E denies the allegations in Paragraph 176.**

177. The balance of equities favors Plaintiff.

**ANSWER: Paragraph 177 sets forth a legal conclusion that does not require a response from 3E. To the extent a response is required, 3E denies the allegations in Paragraph 177.**

178. The public interest favors orderly resolution of ownership disputes and protection or business operations.

**ANSWER: Paragraph 178 sets forth a legal conclusion that does not require a response from 3E. To the extent a response is required, 3E denies the allegations in Paragraph 178.**

179. Plaintiff requests temporary, preliminary, and permanent injunctive relief preventing 3E from:

(a) holding itself out as a member of MSG;

(b) accessing MSG records based upon a disputed ownership claim;

(c) interfering with management or MSG;

(d) communicating with lenders, customers, vendors, or employees as a purported member or MSG; and

(e) transferring, assigning, pledging. or encumbering any purported ownership interest in MSG.

**ANSWER: Paragraph 179 sets forth a legal conclusion that does not require a response from 3E. To the extent a response is required, 3E denies the allegations in Paragraph 179.**

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Enter judgment in favor of Plaintiff on all Counts;

B. Declare that the conditions precedent contained in the Singer Assignment were never satisfied;

C. Declare that the Singer Assignment never became effective;

D. Declare that J4 never acquired Singer's ownership interest through the Singer Assignment;

E. Declare that the February 21, 2023 assignment to 3E was void ab initio, or alternatively void, ineffective, unenforceable, or otherwise incapable of transferring ownership, and conveyed no ownership interest to 3E;

F. Declare that no subsequent transfer validly conveyed ownership to 3E;

G. Declare that Plaintiff owns one hundred percent (100%) of the validly outstanding membership interests of MSG;

H. Quiet title to all membership interests in MSG in favor of Plaintiff;

I. Award damages as allowed by, in an amount in excess of $25.000;

J. Impose a constructive trust if appropriate;

K. Reform, rescind. cancel, or otherwise equitably modify the transaction documents to the extent necessary to resolve ownership of the membership interests of MSG as between Plaintiff and Defendant;

L. Grant temporary, preliminary, and permanent injunctive relief; and

M. Award costs, interest, and such other and further relief as the Court deems just and proper.

**ANSWER: 3E denies Plaintiff's Prayer for Relief, including that Plaintiff is entitled to the relief requested.**

## GENERAL DENIAL

3E denies each and every allegation not expressly admitted herein and denies that Plaintiff is entitled to any of the relief he requests.

## 3E'S AFFIRMATIVE AND SEPARATE DEFENSES

1. Plaintiff's Verified Complaint fails, in whole or in part, to state a claim upon which relief can be granted.

2. 3E acted, at all times, in good faith and in accordance with all applicable standards of care.

3. Plaintiff is barred from the relief sought because he approved, ratified, directed, or consented to the actions and conduct of 3E.

4. 3E did not breach any duty owed to Plaintiff.

5. Plaintiff lacks standing and is not the real party in interest with regard to the claims asserted.

6. Plaintiff's claims lack a necessary party.

7. Plaintiff's claims are barred, in whole or in part, by the doctrines of laches, waiver, estoppel, and/or unclean hands.

8. Plaintiff's claims are barred, in whole or in part, because they require relief which exceeds that available under applicable law.

9. 3E reserves the right to plead, assert, and rely upon additional defenses which may become known during the course of discovery.

## COUNTERCLAIM

Defendant/Counterclaimant 3E Maverick, LLC ("3E") states its Counterclaim against Lee/Counterclaim Defendant Troy Lee as follows:

## INTRODUCTION

1. 3E's Counterclaim arises from Lee's systemic and bad-faith campaign to strip 3E of its duly acquired 46% membership interest in Maverick Steel Group, LLC ("MSG"), a North Carolina limited liability company. Through a series of unauthorized and self-dealing transactions, Lee now claims to be the sole member and owner of MSG and has blocked 3E from enforcing and protecting its membership interest.

2. 3E brings this Counterclaim seeking: (i) a declaratory judgment that it holds a 46% membership interest in MSG and that Lee's unauthorized and self-dealing transactions are void; (ii) damages for breach of Lee's fiduciary duty; (iii) damages for breach of the Operating Agreement for failing to provide 3E with necessary tax documents and improperly amended the Operating Agreement; (iv) damages for breach of Lee's implied duty of good faith and fair dealing; and (v) damages for conversion of 3E's membership interest.

## PARTIES, JURISDICTION, AND VENUE

3. 3E is a single-member limited liability company organized under the laws of the State of New York. Joel Ciment is 3E's sole and managing member and is a resident of New York. For purposes of diversity jurisdiction, 3E is a citizen of New York.

4. Upon information and belief, Lee is a resident and citizen of Henderson County, North Carolina.

5. This Court has subject-matter jurisdiction over this action and the parties pursuant to 28 U.S.C. § 1332(a)(1) because this is a civil action between citizens of different states, and the amount in controversy exceeds $75,000.00 exclusive of interests and costs.

6. The Court also has supplemental jurisdiction over 3E's claims pursuant to 28 U.S.C. § 1367.

7. Venue is proper in this district under 28 U.S.C. §§ 1441 and 1446 because this action was originally filed in the Superior Court for Henderson County, North Carolina and was removed to the United States District Court for the Western District of North Carolina, Asheville Division on September 25, 2026.

## FACTS

### A. Background

8. MSG is a North Carolina limited liability company that was organized on or about March 23, 2021. MSG is a light-gauge-steel-framing and prefabricated-panel manufacturing company.

9. Upon information and belief, MSG's annual gross revenue is approximately $1.2 million.

10. Under the Operating Agreement executed on or about April 13, 2021, MSG's original members and their respective ownership interests were The Singer Company ("Singer") – 48%; J4 Investments, LLC ("J4") – 48%; and TB0401, LLC ("TB0401") – 4%. *See* Exhibit H.

11. On or about June 24, 2022, the parties amended the Operating Agreement to allocate 45% of the membership interests to J4, 45% to Singer, and 10% to TB0401. *See* Exhibit M.

### B. 3E Becomes a Member of MSG

12. In 2022, Ciment learned of MSG through Lee, whom he knew from other business dealings. Lee explained that MSG needed additional capital to continue operating but that the then-existing members were unable to contribute the necessary capital.

13. Interested in the business opportunity, Ciment arranged for financing via GN Lending, LLC ("GN Lending") in exchange for 3E's 46% membership interest in MSG.

14. On or about February 21, 2023, GN extended MSG a commercial loan of up to $2,850,000, with a maturity date of February 21, 2026.

15. J4, 3E, and TB0401 consented to the loan and authorized MSG to execute the loan documents.

16. The loan was secured by an Ownership Interests Pledge and Security Agreement under which J4 pledged its 51% membership interest, 3E pledged its 46% membership interest, and TB0401 pledged its 3% membership interest.

17. Also, on or about February 21, 2023, J4 executed an Assignment of Membership Agreement (the "3E Assignment"), assigning a 46% membership interest in MSG to 3E. *See* Exhibit J.

18. Lee signed the 3E Assignment on behalf of J4. Lee represented and warranted that he was authorized to transfer J4's membership interests in MSG and that the membership interests were not encumbered or otherwise pledged.

19. The same day, J4, 3E, and TB0401 executed MSG's First Amended and Restated Operating Agreement ("Operating Agreement"). The Operating Agreement sets forth that 3E holds a 46% interest, J4 holds a 51% interest, and TB0401 holds a 3% interest. These percentages coincide with the 3E Assignment and the representations made in the GN loan regarding the members' respective percentage membership interests. *See* Exhibit I.

20. Under the Operating Agreement, 3E and J4 were both Managing Members.

21. 3E was legally formed under the laws of the State of New York on or about November 6, 2023.

22. Although the 3E Assignment, Operating Agreement, and GN loan were all executed prior to 3E's legal formation, Ciment was acting as 3E's agent and promoter at that time and all parties understood that Ciment was acting on behalf of 3E.

23. 3E adopted the 3E Assignment, Operating Agreement, and GN loan upon its legal formation. Indeed, holding the MSG equity is 3E's sole purpose. 3E adopted these agreements through its conduct in performing strategic services for MSG and filing tax forms that reflect its membership interest in MSG.

24. On or about May 18, 2023, the GN loan was assigned to 3 Equities I LLC ("3 Equities"), which is a separate entity that Ciment also has a membership interest in. The loan amount was amended to $2,700,000.

25. The Amended Loan was secured by a blanket security interest, including MSG's operating assets, rather than an ownership-interests pledge.

26. On or about May 15, 2023, Singer and J4 entered into an Assignment of Membership Interest and Release of All Debt (the "Singer Assignment"), under which Singer assigned its MSG membership interest to J4, subject to specified terms and conditions. *See* Exhibit K.

27. On or about March 1, 2024, J4 assigned its membership interest in MSG to Lee in his individual capacity, although there is no contemporaneous instrument to reflect this assignment.

**C. The First Amendment to First Amended and Restated Operating Agreement is Executed**

28. On or about October 14, 2024, Lee, 3E, and TB0401 executed the First Amendment to First Amended and Restated Operating Agreement of MSG ("First OA Amendment"), which

states that Lee has a 51% membership interest in MSG, 3E has a 45% interest, and TB0401 has a 4% interest. *See* Exhibit L.

29. 3E's 2024 Schedule K-1 reflects a 46% interest in MSG. Upon information and belief, the First OA Amendment's membership table incorrectly gave TB0401 an extra percent of membership interest. The correct membership interests are Lee – 51%, 3E – 46%, and TB0401 – 3%.

30. To the extent there was any doubt as to 3E's membership interest, 3E, Lee, and TB0401 adopted, ratified, and/or confirmed the 3E Assignment by executing the First OA Amendment.

31. The First OA Amendment removed 3E as a Managing Member and made Lee the sole Managing Member. As a result of this amendment, Lee became the Managing Member, in addition to already being the Majority Member with 51% membership interest.

32. Lee owed 3E and TB0401 fiduciary duties due to his status as the Majority Member and Managing Member.

33. Pursuant to the First OA Amendment, the Managing Member may not amend any provision of the Agreement that would have an adverse effect on any Member (including, without limitation, such Member's percentage interest or the interest of any Member in the Company's allocations of profit and loss or its distributions of cash, or other property) without the prior written consent of such Member. Copies of each such amendment shall be delivered to each Member at least 30 days before the effective date of such amendment.

34. The First OA Amendment requires the Managing Member to deliver to each Member any necessary tax information as soon as practicable after the end of each Fiscal Year of the Company, but not later than seven months after the end of each year. Specifically, a report

shall be furnished to each Member indicating such Member's share of the income or loss of the Company for such Fiscal Year for federal-income-tax purposes.

**D. Lee Purports to Erase 3E's Membership Interest in 3E**

35. From 2023 until approximately May 27, 2026, MSG and its members recognized 3E as a member of MSG and benefitted from 3E's status as a member.

36. Over the years, 3E offered strategic advice to MSG, and Ciment, on behalf of 3E, served as MSG's Chief Operating Officer.

37. 3E received a Schedule K-1 for the tax years 2023 and 2024. Both times, the K-1 stated that 3E held 46% of MSG's equity.

38. In the Summer of 2026, however, Lee approached Ciment about needing additional capital for MSG above the initial commitment from 3 Equities. Ciment expressed hesitation about extending any additional capital on behalf of 3E or having 3 Equities lend any additional money.

39. Shortly thereafter, on or about June 1, 2026, 3E received a letter from Lee on behalf of MSG stating that MSG does not recognize 3E as a current Member of MSG and that the books and records of MSG are being updated to reflect Lee as the sole member. *See* Exhibit F.

40. The June 1 letter identified a series of instruments that purportedly strip 3E of its membership interest. Those documents are as follows:

a. The Termination of Assignment Due to Failure of Conditions Precedent (the "Singer Termination") executed by Singer and Lee on or about May 27, 2026 which purports to rescind Singer's May 15, 2023 assignment of its interest in MSG to J4. *See* Exhibit A.

b. The Assignment of Membership Interests ("the Consolidation of Ownership Interest") executed on or about May 27, 2026 by Singer and TB0401 which purports to

assign their membership interests in MSG to Lee, which would make Lee the sole member of MSG. *See* Exhibit C.

41. On June 1, 2026, Lee executed a Confirmatory Assignment of Membership Interest which confirmed and ratified J4's earlier assignment to Lee. *See* Exhibit B.

42. Relying on these inoperative and ineffective agreements, Lee then executed the Second Amendment to the First Amended and Restated Operating Agreement ("Second OA Amendment") and the Sole-Member Operating Agreement on or about May 31, 2026. These documents improperly identify Lee as the sole member of MSG and the owner of 100% of its membership. *See* Exhibits D and E.

43. On or about June 3, 2026, 3E responded to Lee's letter rejecting his position that 3E does not have, and never had, any membership interest in MSG. 3E demanded that Lee cease and desist from holding himself out as the sole member and demanded that 3E's membership interest be recognized and immediately restored. *See* Exhibit G.

44. After sending the Rejection Letter, the relationship between Lee and Ciment, and MSG and 3E, seemingly returned to normal. Lee and Ciment continued to communicate about MSG's regular business operations.

45. On or about July 14, 2026, Ciment flew to North Carolina to meet with Lee during which they discussed regular MSG business. MSG's ownership, and 3E's membership interest in MSG, were not discussed during this meeting.

46. Until 3E was served with Lee's lawsuit, 3E, and Ciment acting on behalf of 3E, believed that the ownership dispute had been resolved in 3E's favor and that MSG had restored 3E's membership interest.

47. On or about September 3, 2026, Lee emailed Ciment a "Notice of Revocation of Authority," purporting to revoke Ciment's authority as COO and/or Managing Partner of MSG, cutting off Ciment's access to company email and systems, and barring Ciment from MSG's facilities. The Notice stated that 3E's membership interest "remains disputed." *See* Declaration of J. Ciment in Support of Motion for TRO and PI, Exhibit 14 (ECF 2-17).

48. 3E has not received a Schedule K-1 for the tax year 2025. 3E sent Lee a demand for its 2025 Schedule K-1 on October 1, 2026. That same day, Lee responded to 3E acknowledging that he did not issue a 2025 Schedule K-1, and refusing to do so, because he disputes 3E's membership interest.

49. Upon information and belief, Lee has taken and continues to take additional actions to exclude 3E from any participation in MSG, to deny 3E access to MSG's books and records, and to deprive 3E of its membership interest in MSG.

50. Upon information and belief, Lee has taken and continues to take additional actions that jeopardize 3E's membership interest in MSG, including but not limited to, refusing to issue 3E a 2025 Schedule K-1 and improperly transferring 3E's membership interests to Lee without 3E's knowledge or consent.

**COUNT I – DECLARATORY JUDGMENT**

51. 3E incorporates all preceding allegations as if fully set forth herein.

52. An actual controversy exists concerning ownership of MSG.

53. 3E is entitled to a declaration that:

a. 3E holds a valid 46% membership interest in MSG, acquired through the 3E Assignment dated February 21, 2023 and the Operating Agreement, and as confirmed, adopted, and/or ratified by the October 22, 2024 First OA Amendment.

b. The Singer Termination does not affect, diminish, or extinguish 3E's membership interest in MSG.

c. The Consolidation of Ownership Interest is void and of no force or effect insofar as it purports to consolidate or extinguish 3E's 46% membership interest in MSG.

d. The Second OA Amendment is void and of no force or effect as to 3E's membership interest, having been adopted without 3E's prior written consent and without the requisite 30-day notice, in violation of the protective provisions of the First OA Amendment.

e. The Sole-Member Operating Agreement is void and of no force or effect as to 3E's membership interest in MSG.

f. Lee is not the sole member of MSG.

g. 3E is entitled to all rights, privileges, and economic interests of a 46% member of MSG, as provided for in the Operating Agreement, as amended by the First OA Amendment.

**COUNT II – BREACH OF FIDUCIARY DUTY**

54. 3E incorporates all preceding allegations as if fully set forth herein.

55. At all relevant times herein, Lee has held a 51% membership interest in MSG and 3E has held a 46% membership interest in MSG.

56. At all relevant times herein, Lee has been the Majority Member and Managing Member of MSG and has owed fiduciary duties to 3E due to his status as the Majority Member of MSG.

57. Lee has breached his fiduciary duties to 3E by, among other things:

a. Unilaterally purporting to strip 3E of its 46% membership interest through the Singer Termination, Consolidation of Ownership Interest, Second OA Amendment, and Sole-Member Operating Agreement;

b. Engaging in self-dealing by consolidating all membership interests in himself through a manufactured chain of assignments;

c. Amending MSG's Operating Agreement without 3E's consent;

d. Directing the amendment of the Company's tax filings and K-1 Schedules to retroactively eliminate 3E's membership interest;

e. Refusing to provide 3E all necessary tax documents; and

f. Excluding 3E and its representative Joel Ciment from MSG's books and records.

58. Lee's breaches of his fiduciary duty have resulted in damages to 3E in an amount to be proven at trial, but in any event, greater than $75,000.00.

**COUNT III – BREACH OF THE OPERATING AGREEMENT**

59. 3E incorporates all preceding allegations as if fully set forth herein.

60. 3E, Lee, and TB0401 are parties to the valid Operating Agreement, as amended by the First OA Amendment.

61. Pursuant to the terms of the Operating Agreement, Lee, as the Managing Member, was prohibited from amending any provision of the agreement in a manner that would have an adverse effect on any Member, including such Member's percentage interest in MSG, without prior written consent of such Member and 30 days' notice prior to the amendment's effect.

62. On or about May 31, 2026, Lee amended the Operating Agreement in a manner that adversely affected 3E by eliminating 3E's membership interest.

63. Lee failed to provide 3E with 30 days' notice and did not receive 3E's written consent to execute the Second OA Amendment.

64. Therefore, Lee's execution of the Second OA Amendment breached the Operating Agreement.

65. The Operating Agreement's terms required Lee, as the Managing Member, to deliver to 3E any necessary tax information as soon as practicable after the end of each Fiscal Year of the Company, but not later than seven months after the end of each year and to provide a report indicating 3E's share of the income or loss of the Company for such Fiscal Year for federal-income-tax purposes.

66. Lee failed to provide the required tax information to 3E for the 2025 Fiscal Year.

67. Lee's failure to provide the necessary tax information breached the Operating Agreement.

68. 3E has suffered damages resulting from the foregoing violations and breaches.

69. The breaches described herein have proximately caused damage to 3E in an amount to be proven at trial, but in any event, greater than $75,000.00.

**COUNT IV – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALNG**

70. 3E incorporates all preceding allegations as if fully set forth herein.

71. The Operating Agreement, as amended by the First OA Amendment, is a valid and enforceable contract.

72. Every contract under North Carolina law contains an implied covenant of good faith and fair dealing.

73. Lee has breached the implied covenant of good faith and fair dealing by using his Managing Member authority under the Operating Agreement in bad faith to deprive 3E of the fruits

of the bargain reflected in the Operating Agreement. Lee's breaches include, but are not limited to:

a. Using his position as Managing Member to unilaterally adopt the Second OA Amendment and Sole-Member Operating Agreement, purporting to eliminate 3E's 46% membership interest, in violation of the Operating Agreement;

b. Procuring and relying upon the manufactured Singer Termination as pretext to claim that 3E's membership interest is invalid when the Singer Termination cannot, by its terms or as a matter of law, affect 3E's independently acquired membership interest;

c. Executing the Consolidation of Ownership Interest and Confirmatory Assignment to consolidate all interests in himself, in an effort to nullify 3E's membership interest;

d. Directing the amendment of tax filings and Schedule K-1s to retroactively erase 3E's membership interest and economic rights;

e. Refusing to provide 3E all relevant tax information for Fiscal Year 2025;

f. Denying 3E access to the Company's books, records, and financial information to which the Operating Agreement entitles 3E;

g. Revoking Ciment's authority and access to the Company's operations, email, and facilities; and

h. Filing the instant lawsuit seeking a judicial declaration that Lee is the sole owner of MSG.

74. Lee's conduct was undertaken in bad faith, with the purpose and effect of depriving 3E of the membership interest for which 3E bargained for in the Operating Agreement.

75. As a direct and proximate result of Lee's breach of the implied covenant of good faith and fair dealing, 3E has suffered damages in an amount to be proven at trial, but in any event, greater than $75,000.00.

**COUNT V – CONVERSION**

76. 3E incorporates all preceding allegations as if fully set forth herein.

77. 3E's 46% membership interest in MSG constitutes a valid property interest.

78. Lee's actions as described above constitute conversion of 3E's property, in that Lee has, without authorization, assumed and exercised the right of ownership over property belonging to 3E, to the exclusion of 3E's rights to those assets.

79. As a result of Lee's conversion, 3E has suffered and continues to suffer damages in an amount to be proven at trial, but in any event, greater than $75,000.00, as a natural and proximate cause of Lee's conversion.

**WHEREFORE**, 3E respectfully prays that this Court enter judgment against Lee as follows:

A. A declaratory judgment that 3E holds a valid 46% membership interest in MSG;

B. A declaratory judgment that the Singer Termination does not affect, diminish, or extinguish 3E's membership interest;

C. A declaratory judgment that the Second Amendment to the First Amended and Restated Operating Agreement dated May 31, 2026 is void and of no force or effect;

D. A declaratory judgment that the Sole-Member Operating Agreement dated May 31, 2026 is void and of no force or effect;

E. A declaratory judgment that the Consolidation of Ownership Interest dated May 27, 2026 is void and of no force or effect and does not affect, diminish, or extinguish 3E's membership interest;

F. The imposition of a constructive trust on any assets, distributions, or value that Lee has improperly diverted or appropriated from 3E's 46% membership interest;

G. Compensatory damages in excess of $75,000.00 to be determined at trial;

H. Attorneys' fees in accordance with the Operating Agreement; and

I. Award costs, pre- and post-judgment interest, and such other and further relief as the Court deems appropriate.

Dated: October 2, 2026

Respectfully submitted,

*_/s/ Mark S. Eisen_*
Mark S. Eisen
N.C. State Bar No. 53836
Benesch, Friedlander, Coplan & Aronoff LLP
71 S. Wacker Drive, Suite 1600
Chicago, Illinois 60606
T: (312) 212-4956
F: (312) 767-9192
meisen@beneschlaw.com

Michael D. Meuti
*Pro hac vice forthcoming*
Benesch, Friedlander, Coplan & Aronoff LLC
127 Public Square, Suite 4900
Cleveland, Ohio 44114
T: (216) 363-4500
F: (216) 363-4588
mmeuti@beneschlaw.com

-and-

Christopher G. Lewis
N.C. State Bar No. 25677
ALLEN STAHL & KILBOURNE, PLLC

20 Town Mountain Road, Suite 100
Asheville, NC 28801
828-254-4778
828-254-6646 fax
clewis@asklawnc.com

*Counsel for Defendant 3E Maverick, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 2, 2026, I electronically filed the foregoing Answer, Affirmative Defenses, and Counterclaims using the CM/ECF system which will send notification of a filing to all parties. I also served a copy of the foregoing via email on Troy Lee at troy@builtbymaverick.com and via regular U.S. mail at 1838 Willow Road, Hendersonville, North Carolina 28739.

*/s/ Mark S. Eisen*
Mark S. Eisen
*Counsel for Defendant 3E Maverick, LLC*