IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:26-cv-00298-MR-WCM

| | | |
|---|---|---|
| TROY LEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OF LAW IN |
| vs. | ) | SUPPORT OF PLAINTIFF'S |
| | ) | MOTION TO REMAND OR, IN |
| 3E MAVERICK, LLC, | ) | THE ALTERNATIVE, FOR LEAVE |
| | ) | TO JOIN MAVERICK STEEL |
| Defendant. | ) | GROUP, LLC AND TO REMAND |
| | ) | |

Plaintiff Troy Lee, appearing *pro se*, submits this memorandum in support of his Motion to Remand or, in the Alternative, for Leave to Join Maverick Steel Group, LLC and to Remand, filed with this memorandum.

## I. INTRODUCTION

This is a dispute over who owns the membership interests of Maverick Steel Group, LLC ("MSG"), a North Carolina limited liability company based in Henderson County. MSG's 2021 Operating Agreement requires that "[a]ny dispute arising out of or related to this Agreement must be brought in federal or state court in Henderson County, North Carolina," and makes that forum exclusive. [Doc. 2-4 at 18, § 12.02]. Plaintiff filed this action in the Superior Court of Henderson County. Defendant 3E Maverick, LLC ("3E") removed it to this Court, which does not sit in Henderson County. Under *Bartels ex rel. Bartels v. Saber Healthcare Group, LLC*, 880 F.3d 668 (4th Cir. 2018), a clause that confines disputes to courts in a county with no federal courthouse waives the right to remove. The action should be remanded.

In the alternative, if the Court concludes that MSG is a required party under Rule 19, MSG's joinder would destroy diversity, and the Court should permit joinder and remand under 28 U.S.C. § 1447(e).

## II. BACKGROUND

**The 2021 Operating Agreement.** MSG was organized in 2021 and has its principal office in Henderson County. [Doc. 1-1 ¶¶ 2, 13]. Its Operating Agreement dated April 13, 2021 (the "2021 Agreement"), which 3E filed as an exhibit to its motion, provides:

> This Agreement and the parties' conduct arising out of or related to it shall be governed by laws of the North Carolina, without regard to its conflict of law rules. Any dispute arising out of or related to this Agreement must be brought in federal or state court in Henderson County, North Carolina and the parties hereby consent to the exclusive jurisdiction and venue of such forum.

[Doc. 2-4 at 18, § 12.02]. "Subject to the provisions of this Agreement relating to transferability," the 2021 Agreement "is binding on and inures to the benefit of the Members, and their respective distributees, successors, and assigns." [Id. at 18, § 12.03]. It requires that "[a]ll amendments to this Agreement must be in writing and signed by all of the Members." [Id. at 20, § 12.11]. And it provides that "[a]dmission of any additional Member requires the written consent of all the Members of the Company." [Id. at 5, § 3.04].

**The February 21, 2023 documents.** 3E's asserted interest in MSG rests on an assignment from J4 Investments, LLC ("J4"), then a member of MSG under the 2021 Agreement, dated February 21, 2023. [Doc. 2-7 at 2–3; Doc. 2-1 at 2, ¶ 7; Doc. 1 ¶ 3]. A "First Amended and Restated Operating Agreement" bearing the same date (the "2023 Agreement") recites that it "amends and restates" the 2021 Agreement "as amended by the Amendment to the Operating Agreement dated June 24, 2022." [Doc. 2-6 at 2]. It bears signature blocks for J4, TB0401, LLC, and 3E. [Id. at 19]. 3E alleges that it was formed on or about November 6, 2023, and that these documents were

executed before its formation by Mr. Ciment as its agent and promoter. [Doc. 7 at 45–46, Countercl. ¶¶ 21–22]. The Singer Company, LLC, a member under the 2021 Agreement, did not sign it. [Doc. 2-5 at 2; Doc. 2-6 at 19]. The 2023 Agreement contains a North Carolina choice-of-law provision and a jury waiver. [Doc. 2-6 at 17]. It contains no forum-selection clause; its references to "a court of competent jurisdiction" designate no particular court. [Doc. 2-6 at 7, 17–18]. It also contains no express supersession or merger clause, although it recites that it "amends and restates" the 2021 Agreement. [Id. at 2, 16–18].

**This action.** Plaintiff filed his Verified Complaint in the Superior Court of Henderson County on August 13, 2026, alleging venue under "the forum-selection provisions of the governing operating agreements." [Doc. 1-1 ¶ 10; Doc. 1 ¶ 4]. He claims 100% of the validly outstanding membership interests of MSG. [Doc. 1-1 ¶ 3]. 3E claims at least 45% in its Answer and 46% in its Counterclaim. [Doc. 1 ¶ 3; Doc. 7 at 28, ¶ 106; id. at 50, Countercl. ¶ 53(a)]. 3E removed on diversity grounds on September 25, 2026. [Doc. 1 at 1, 3, ¶¶ 10–12]. The Court denied 3E's motion for a temporary restraining order and preliminary injunction and directed briefing on whether MSG is a necessary party. [Doc. 3 at 3]. On October 2, 2026, 3E answered and asserted a Counterclaim against Plaintiff seeking a declaration that it holds a 46% membership interest and damages for, among other things, breach of the operating agreement. [Doc. 7 at 50, Countercl. ¶ 53(a); id. at 52–53, Countercl. ¶¶ 59–69; id. at 56, Prayer G].

**Where this Court sits.** Henderson County lies within the Western District of North Carolina, and court for the District is held at Asheville, Bryson City, Charlotte, Shelby, and Statesville. 28 U.S.C. § 113(c). None of those places is in Henderson County. Plaintiff requests that the Court take judicial notice of that fact. Fed. R. Evid. 201(b).

## III. LEGAL STANDARD

A defendant may waive its right to remove an otherwise removable case by agreeing to a forum-selection clause. *Bartels*, 880 F.3d at 681. In the removal context, "an enforceable forum-selection clause essentially operates as an affirmative defense to removal," and the plaintiff bears the burden of showing that the defendant waived its right to remove by agreeing to it. *Id.* The court interprets the clause under ordinary principles of contract interpretation and enforces it as written; it "may not re-write the contract." *Id.* at 674.

## IV. ARGUMENT

### A. Section 12.02 limits disputes to a court located in Henderson County, and no federal court sits there.

Section 12.02 is mandatory and exclusive. Disputes "must be brought" in the designated forum, and the parties "consent to the exclusive jurisdiction and venue of such forum." [Doc. 2-4 at 18, § 12.02]. The designated forum is defined by geography: a "federal or state court in Henderson County, North Carolina." [Id.].

*Bartels* supplies the governing rule. There, the clause made "the county in which the Facility is located" the "sole and exclusive venue." *Bartels*, 880 F.3d at 671–72. The Fourth Circuit held that "[b]ecause there is no federal courthouse in the designated county, removal of the case to federal court would mean that the dispute would be resolved in a county other than the one designated by the contract." *Id.* at 674. It concluded: "Because there is no federal court in Franklin County, the plain language of the forum-selection clause precludes removal." *Id.* at 676. And it refused to read the clause to include the county "in which a federal courthouse is located that has jurisdiction over" the designated county, because "[t]his court, of course, may not re-write the contract; our role is limited to enforcing the contract as written." *Id.* at 674.

This Court has applied *Bartels* to remand a removed case where the clause required suit "in a court of proper jurisdiction in Watauga County," observing that "[t]here is no federal courthouse in Watauga County nor was there a federal courthouse in that county at the time of the parties' contract." *Aerial Adventure Techs., LLC v. C3 Mfg., LLC*, No. 5:23-cv-00018-KDB-SCR, **ECF No. 31 at 5** (W.D.N.C. May 18, 2023) (order adopting magistrate judge's memorandum and recommendation).

The words "federal or state court" do not change the result. *Bartels* itself recognized that a clause placing venue in the courts "in" a county provides venue in the state and federal courts *located in* that county. 880 F.3d at 675 (citing *Simonoff v. Expedia, Inc.*, 643 F.3d 1202, 1207 (9th Cir. 2011)). Section 12.02 uses exactly that structure. A federal court would satisfy it if one sat in Henderson County; none does. Reading "federal . . . court in Henderson County" to mean a federal court located in Buncombe County would require the rewriting *Bartels* forbids. 880 F.3d at 674. Clauses using geographical limitations "permit the case to be filed with any court, whether state or federal, that is located within the contractually described geographical boundary." *Id.* at 676. Section 12.02's boundary is Henderson County.

Plaintiff acknowledges that some district courts outside this Circuit have read a clause naming "state or federal court" in a county without a federal courthouse to include the federal district court for that county. *See TileBar v. Glazzio Tiles*, 723 F. Supp. 3d 164, 183–87 (E.D.N.Y. 2024) (construing "any state or federal court located in the state of New York, County of Nassau"). *TileBar* is not binding here. *TileBar* expressly distinguished *Bartels* on the ground that the *Bartels* clause did not refer to federal court. *Id.* at 186. Plaintiff submits that *Bartels*'s geographic reasoning nonetheless governs the express county limit in § 12.02. *TileBar* also did not decide whether a forum-selection clause waives the right to remove; it addressed a venue challenge, treated as a

forum non conveniens motion, to a case filed originally in federal court. *Id.* at 182–83. Its reasoning rests on the canon against surplusage: a reading that excludes every federal court leaves the word "federal" with no work to do. *Id.* at 185–86. But the reading *TileBar* adopts — courts "with jurisdiction over" the named county, *id.* at 187 — is the reading the Fourth Circuit declined to write into the clause in *Bartels*, which refused to extend a county clause to "the county in which a federal courthouse is located that has jurisdiction over" the designated county. 880 F.3d at 674. The surplusage canon also cuts the other way: 3E's reading leaves "in Henderson County" with no work to do as to federal courts. Section 12.02 names both court systems and confines both to one county, which is how *Bartels* reads a geographic clause. *Id.* at 676. The Court should enforce that boundary as written.

**B. This dispute arises out of and relates to the 2021 Agreement.**

Section 12.02 reaches "[a]ny dispute arising out of or related to" the 2021 Agreement. [Doc. 2-4 at 18, § 12.02]. This dispute arises out of that agreement. 3E's claim is that J4, a member under the 2021 Agreement, assigned part of its interest to 3E by an assignment dated February 21, 2023. [Doc. 2-7 at 2–3; Doc. 1 ¶ 3]. Whether that assignment transferred any membership interest, and whether 3E was ever admitted as a member, turn on the 2021 Agreement's terms, including its requirement that all members consent in writing to the admission of any additional member. [Doc. 2-4 at 5, § 3.04; Doc. 1-1 ¶ 47]. So does whether the 2023 Agreement ever took effect, because the 2021 Agreement requires every amendment to be signed by all members. [Doc. 2-4 at 20, § 12.11]. 3E itself describes the case as a dispute over "the parties' respective ownership interests in" MSG that "centers on who owns MSG and in what proportions." [Doc. 1 ¶¶ 1, 9]. That is a dispute "related to" MSG's operating agreement.

**C. 3E is bound by Section 12.02.**

3E did not sign the 2021 Agreement, but it is bound by § 12.02 for two reasons. Plaintiff does not concede that 3E holds any interest in MSG. The point is that 3E cannot claim an interest under the 2021 Agreement and at the same time disclaim that agreement's forum clause. Plaintiff bears the burden of proving, by a preponderance of the evidence, that 3E is bound. *See Bartels*, 880 F.3d at 681; *Pfohl v. Saber Healthcare Grp., LLC*, No. 18-2335, slip op. at 6–9 (4th Cir. Aug. 12, 2019) (per curiam) (unpublished). The facts that bind 3E come from 3E itself: its principal's sworn declaration and its own Counterclaim. [Doc. 2-1 at 2, ¶ 7; Doc. 7 at 45, Countercl. ¶¶ 17, 19; id. at 50–51, Countercl. ¶ 53(a), (g)].

**First, 3E claims as an assignee.** The 2021 Agreement binds the members and "their respective . . . successors, and assigns." [Doc. 2-4 at 18, § 12.03]. 3E's only claimed source of title is an assignment from J4, a member under that agreement. [Doc. 2-7 at 2–3; Doc. 2-1 at 2, ¶ 7]. 3E's Counterclaim confirms it: 3E alleges that its interest was "acquired through the 3E Assignment" from J4. [Doc. 7 at 45, Countercl. ¶ 17; id. at 50, Countercl. ¶ 53(a)]. That binding effect is "[s]ubject to the provisions of this Agreement relating to transferability," [Doc. 2-4 at 18, § 12.03], and Plaintiff contends that the transfer to 3E did not satisfy them. But 3E's claimed interest depends on its being an assign; it cannot claim that status for the interest and disclaim it for the forum clause.

**Second, 3E seeks the benefits of the agreement.** A nonsignatory may be bound by a contractual clause under ordinary common-law principles, including estoppel. *Bartels*, 880 F.3d at 679 (citing *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GmbH*, 206 F.3d 411, 416–17 (4th Cir. 2000)). A nonsignatory that claims a "direct benefit" from a contract "cannot seek to enforce those contractual rights and avoid the contract's requirement" governing where disputes arising out of it are resolved. *Int'l Paper*, 206 F.3d at 418 (internal quotation marks omitted)

(arbitration clause). The membership rights 3E asserts exist only by virtue of MSG's operating agreement, and 3E asked this Court to enforce them. [Doc. 2-2 at 2, 13; Doc. 2-18 at 1 (proposed order)]. Its Counterclaim goes further. It sues for breach of the operating agreement, asks the Court to declare that 3E is entitled to "all rights, privileges, and economic interests of a 46% member of MSG, as provided for in the Operating Agreement," and seeks attorneys' fees "in accordance with the Operating Agreement." [Doc. 7 at 51, Countercl. ¶ 53(g); id. at 52–53, Countercl. ¶¶ 59–69; id. at 56, Prayer H]. By "Operating Agreement," 3E means the 2023 Agreement. [Id. at 45, Countercl. ¶ 19]. But every right 3E claims under that instrument depends on the interest J4 held, and purported to assign, under the 2021 Agreement. 3E's requested declaration rests on the 3E Assignment, by which J4 purported to assign an interest it held under the 2021 Agreement, [Doc. 7 at 50, Countercl. ¶ 53(a)], and the 2023 Agreement does not create MSG's membership interests anew; by its terms it "amends and restates" the 2021 Agreement. [Doc. 2-6 at 2].

**D. The 2023 Agreement did not displace Section 12.02.**

3E will argue that the 2023 Agreement replaced the 2021 Agreement and, because it has no forum clause, eliminated § 12.02. Plaintiff responds in three parts.

**First, whether the 2023 Agreement took effect is disputed, and that dispute itself arises under the 2021 Agreement.** The 2021 Agreement required every amendment to be in writing and "signed by all of the Members." [Doc. 2-4 at 20, § 12.11]. The Singer Company, LLC, a member under the 2021 Agreement, did not sign the 2023 Agreement. [Doc. 2-5 at 2; Doc. 2-6 at 19]. 3E cannot rely on the 2023 Agreement to escape § 12.02 when the 2023 Agreement's validity is one of the questions § 12.02 commits to a court in Henderson County. 3E's own Counterclaim pleads both premises: that under the June 24, 2022 amendment The Singer Company held 45% of MSG, and that the 2023 Agreement was executed by "J4, 3E, and TB0401." [Doc. 7

at 44, Countercl. ¶ 11; id. at 45, Countercl. ¶ 19]. Plaintiff recognizes that his Verified Complaint also invokes the 2023 Agreement's transfer provisions as in effect at the time of the purported February 21, 2023 transfer. [Doc. 1-1 ¶ 49]. Invoking the 2023 Agreement's transfer provisions does not establish that the 2023 Agreement displaced § 12.02. Plaintiff raises the 2023 Agreement's execution only to show that its effect is itself a question arising under the 2021 Agreement; he does not ask the Court to decide on this motion whether the 2023 Agreement, or the October 2024 First Amendment to it, is effective for any purpose other than its bearing on § 12.02. Under either instrument, Plaintiff is MSG's manager: the 2021 Agreement names him its initial Manager, and the First Amendment names him sole Managing Member. [Doc. 2-4 at 12, § 5.01(a); Doc. 2-10 at 3, ¶ 3].

**Second, even if effective, the 2023 Agreement did not clearly revoke § 12.02.** Under North Carolina law, which both agreements select, whether a later contract supersedes an earlier one depends on the parties' intent, and "the making of a second contract dealing with the same subject matter does not necessarily abrogate the former contract between the same parties." *Zinn v. Walker*, 87 N.C. App. 325, 336, 361 S.E.2d 314, 320 (1987); *see Whittaker Gen. Med. Corp. v. Daniel*, 324 N.C. 523, 526, 379 S.E.2d 824, 827 (1989) ("The intent of the parties governs in determining whether there is a novation."). A novation occurs where the second contract deals with the subject matter of the first "so comprehensively as to be complete within itself" or the two "are so inconsistent that the two cannot stand together." *Whittaker*, 324 N.C. at 526, 379 S.E.2d at 827. The 2023 Agreement says nothing about where disputes are to be litigated, so it is not inconsistent with § 12.02. Unlike the 2021 Agreement, it contains no express supersession or merger clause. [Compare Doc. 2-4 at 18, § 12.01, with Doc. 2-6 at 16–18]. And it retains the same North Carolina governing law. [Doc. 2-6 at 17]. Plaintiff acknowledges that the 2023 Agreement

expressly "amends and restates" the 2021 Agreement, [Doc. 2-6 at 2], and restates it in full, and 3E will argue that it is comprehensive enough to be "complete within itself." But the test turns on the parties' intent, *Whittaker*, 324 N.C. at 526, 379 S.E.2d at 827, and the indications of intent here point the other way: the 2023 Agreement omits the 2021 Agreement's supersession clause, carries forward its choice of North Carolina law, and was not signed by every member whose signature the 2021 Agreement required. [Doc. 2-4 at 18, 20, §§ 12.01, 12.11; Doc. 2-6 at 17, 19].

**Third, if § 12.02 remains enforceable, this dispute falls within it.** The assignment on which 3E relies was made by a member holding its interest under the 2021 Agreement, and it bears the same date as the 2023 Agreement, February 21, 2023. [Doc. 2-7 at 2–3; Doc. 2-6 at 2]. Whether J4 could transfer that interest, and whether 3E was admitted, depend on the 2021 Agreement's transfer and admission provisions. A dispute over rights created and transferred under the 2021 Agreement "aris[es] out of or relate[s] to" it even if the agreement was later amended.

**E. In the alternative, if MSG is a required party, the Court should permit joinder and remand under § 1447(e).**

The Court directed briefing on whether MSG is a necessary party under Rule 19. [Doc. 3 at 3–4]. Plaintiff's position, set out in his Rule 19 brief filed with this memorandum, is that it is not. If the Court concludes otherwise, Plaintiff renews the request made in his Verified Complaint for leave to join MSG. [Doc. 1-1 ¶ 12]. The citizenship of a limited liability company is the citizenship of all of its members. *Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011). Plaintiff, a North Carolina citizen, is a member of MSG under every version of the facts either party has advanced. [Doc. 1-1 ¶¶ 1, 3, 132; Doc. 1 ¶¶ 3, 10; Doc. 7 at 47, 51, Countercl. ¶¶ 29, 55]. MSG is therefore a citizen of North Carolina. On 3E's own theory, MSG has an additional member, 3E, and is also a citizen of New York, the State of 3E's sole member. [Doc. 1 ¶¶ 3, 11; Doc. 4 at 2]. Plaintiff does not concede that 3E is a member, but 3E, as

the removing party, bears the burden of establishing jurisdiction, *Bartels*, 880 F.3d at 680, and on the ownership facts 3E alleges, MSG would also be a citizen of New York. MSG's joinder would therefore destroy complete diversity. On 3E's alleged ownership facts, the result does not depend on how MSG is aligned: as a defendant, MSG shares North Carolina citizenship with Plaintiff; as a plaintiff, it shares New York citizenship with 3E.

"If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). The decision is committed to the Court's discretion, guided by "the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether the plaintiff has been dilatory in asking for amendment, whether the plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities." *Mayes v. Rapoport*, 198 F.3d 457, 462–63 (4th Cir. 1999) (internal quotation marks and citation omitted). The factors favor joinder and remand. Plaintiff asked to join MSG in state court before removal, if it were found necessary. [Doc. 1-1 ¶ 12]. The question is before the Court because the Court raised it. [Doc. 3 at 3]. Plaintiff raises it within the time the Court set. And remand avoids dismissal and refiling, returning the case to the court where MSG can be joined without a diversity obstacle.

## V. CONCLUSION

The Court should remand this action to the Superior Court of Henderson County, North Carolina. In the alternative, if the Court determines that MSG is a required party, the Court should grant Plaintiff leave to join MSG and remand the action under 28 U.S.C. § 1447(e).

Respectfully submitted, this 13th day of October, 2026.

Troy Lee, Plaintiff, *pro se*
707 Brooklyn Avenue
Hendersonville, North Carolina 28792
828-338-9478
troy@builtbymaverick.com

## CERTIFICATE OF SERVICE

I certify that on **October 13, 2026**, I served the foregoing Memorandum of Law in Support of Plaintiff's Motion to Remand or, in the Alternative, for Leave to Join Maverick Steel Group, LLC and to Remand on counsel for Defendant 3E Maverick, LLC by depositing a copy in the United States Mail, first-class postage prepaid, addressed as follows, and by courtesy copy by email to clewis@asklawnc.com and meisen@beneschlaw.com:

Christopher G. Lewis
Allen Stahl & Kilbourne, PLLC
20 Town Mountain Road, Suite 100
Asheville, NC 28801
*Counsel for Defendant*

Mark S. Eisen
Benesch, Friedlander, Coplan & Aronoff LLP
71 S. Wacker Drive, Suite 1600
Chicago, Illinois 60606
Counsel for Defendant

Troy Lee, Plaintiff, *pro se*